# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

**BOBBY WAYNE WOOD,**
                **Petitioner,**

**-vs-**                                                   Case No. A-09-CA-789-SS

**RICK THALER,**
                **Respondent.**

## O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Petitioner Bobby Wayne Woods ("Woods")'s Motion for Authorization of Funds to Prepare Clemency Application [#4]. Having considered the motion, the case file as a whole, and the applicable law, the Court enters the following opinion and orders.

### RELIEF REQUESTED

In his motion for the authorization of funds to prepare his clemency application [#4], Woods (through his appointed counsel) seeks funds for expenses to be incurred in the preparation and presentation of his anticipated application for clemency to the Texas Board of Pardons and Paroles and Governor Rick Perry. Pet.'s Mot. Auth. [#4] at 1. Woods is scheduled for execution on December 3, 2009. Woods represents he will be seeking clemency on the basis of the fact he is a person with mental retardation, and is therefore ineligible for execution pursuant to *Atkins v. Virginia*, 536 U.S. 304 (2002). Although Woods presented this claim in a previous habeas petition, he claims his former attorney, Richard Alley, provided substandard representation that prevented his *Atkins* claim from prevailing.

Woods seeks only the "reasonably necessary expenses" to his representation for the purposes of the clemency proceeding. Specifically, he seeks (1) $2,675.00 to hire expert James Patton to travel to Woods, complete his assessment of Woods' adaptive deficits, and prepare an affidavit reflecting the results of that visit, and (2) $1,500 to hire Mandy Welch to film and produce a videotape of Woods.[1] Pet.'s Mot. Auth. at 4.

## BACKGROUND

**I.    Procedural History**

On May 21, 1998, Woods was convicted of and sentenced to death for the kidnaping and murder of eleven-year-old Sarah Patterson in the 355th Judicial District Court of Hood County, Texas. His conviction and death sentence were affirmed on direct appeal to the Texas Court of Criminal Appeals. *Woods v. State*, No. 73,136.

Along with his direct appeal, Woods filed a state application for writ of habeas corpus on September 15, 1999. Attorney Richard Alley was appointed to represent Woods in his state habeas proceedings. The state habeas court entered findings of fact and conclusions of law denying Woods's application. On September 13, 2000, the Texas Court of Criminal Appeals denied Woods's state habeas application in an unpublished order based on the findings of the trial court. *Ex parte Woods*, No. 44, 856-01, slip op. at 2 (Tex. Crim. App. Sept. 13, 2000) (unpublished). Woods's subsequent petition for writ of certiorari was denied by the United States Supreme Court on February 20, 2001. *Woods v. Texas*, 531 U.S. 1155 (2001).

On December 11, 2000, Woods filed a federal habeas petition with the United States District Court for the Northern District of Texas, Fort Worth Division. *Woods v. Johnson*, No. 4:00-CV-

---

[1] Woods represents this videotaped interview is particularly important given the nature of his claim, as the Board of Pardons and Paroles neither meets the inmate nor holds hearings in clemency proceedings. *Id.* at 4, n.2.

1563-A (N.D. Tex. Dec. 11, 2000). The petition was subsequently transferred to the Austin Division of the Western District of Texas, and this Court denied all relief in an order entered on February 8, 2002. *Woods v. Cockrell*, No. A:01-CA-050-SS, slip op. at 29 (W.D. Tex. Feb. 8, 2002). The Fifth Circuit then denied Woods's request for a certificate of appealability on certain of his claims, and affirmed this Court's judgment with respect to his remaining claims. *Woods v. Cockrell*, 2003 WL 1202760 (5th Cir. Feb. 24, 2003) (unpublished).

On April 8, 2003, Woods filed a successor petition for habeas relief in the state courts asserting: (1) his death sentence could not be constitutionally applied to him under *Atkins v. Virginia*, 536 U.S. 204 (2002), because he is mentally retarded; and (2) his conviction and sentence violated the Fifth, Sixth, and Fourteenth Amendments based on *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and its progeny. On May 21, 2003, the Texas Court of Criminal Appeals dismissed Woods's second ground for relief as an abuse of the writ and remanded his first ground to the state trial court for consideration. *Ex Parte Woods*, No. WR-44, 856-02, slip op. at 2 (Tex. Crim. App. May 21, 2003). After conducting an evidentiary hearing, the state trial court entered findings of fact and conclusions of law recommending that Woods's habeas petition be denied. On April 27, 2005, the Texas Court of Criminal Appeals entered an order adopting the findings and conclusions of the trial court and denying all relief. *Ex Parte Woods*, No. WR-44, 856-02, slip op. at 2 (Tex. Crim. App. Apr. 27, 2005) (unpublished).

On September 26, 2005, Woods submitted, but did not obtain leave to file, a successive federal habeas petition with this Court. On October 13, 2005, however, he filed an application with the Fifth Circuit for authorization to file his successive habeas petition. The Fifth Circuit granted Woods authorization to file the petition on December 1, 2005, but only with respect to a single

portion of one of the issues in his petition—namely, "whether Woods is mentally retarded and therefore ineligible for the death penalty according to *Atkins*." *In re Woods*, 155 Fed. Appx. 132, 136 (5th Cir. Dec. 1, 2005). Thus, Woods filed his successive petition pursuant to 28 U.S.C. § 2254 with this Court, asserting his *Atkins* claim. *Woods v. Thaler*, Cause No. 05-CA-354-SS.

This Court denied the successive petition, finding there was "no basis for concluding that the state court's factual finding that Woods is not mentally retarded was unreasonable." Order of May 16, 2006 [Docket No. 18] at 18. To be entitled to relief, Woods faced the "burden of proving, by clear and convincing evidence, that the state court's finding [was] incorrect." *Id.* Because Woods failed to discharge that burden, the Court denied his application for habeas relief.

Nonetheless, on August 21, 2006, this Court granted Woods's Motion for a Certificate of Appealability, finding "[a]lthough he has failed to show himself entitled to habeas relief, ... Woods has satisfied the lesser burden of showing himself entitled to a certificate of appealability." Order of August 21, 2006 [Docket No. 23] at 3. On appeal, the Fifth Circuit affirmed the judgment of the district court. *Woods v. Quaterman*, 493 F.3d 580 (5th Cir. 2007).

On September 16, 2008, the convicting court scheduled Woods to be executed on October 23, 2008. On October 21, 2008—no longer represented by Alley, but with new counsel—Woods filed a second state successor petition, again raising an *Atkins* claim and claiming the presence of significant newly discovered evidence. According to Woods, "[t]he inadequacies of Mr. Alley's representation of Mr. Woods at all prior stages were a central focus of that petition." *See* Pet.'s Mot. Auth. at 3. On October 23, 2008, the Court of Criminal Appeals stayed Woods's scheduled execution, and ordered briefing and argument. The petition was dismissed on October 7, 2009. *Ex parte Woods*, 2009 WL 3189179 (Tex. Crim. App. 2009).

On October 8, 2009, the convicting court scheduled Woods for execution on December 3, 2009. On October 29, 2009, Woods (represented by Mauri A. Levin) filed in this Court a motion for leave to proceed *in forma pauperis*, and an unopposed motion for appointment of counsel for purposes of his clemency proceedings pursuant to 18 U.S.C. § 3599. On November 3, 2009, this Court granted Woods leave to proceed *in forma pauperis* and appointed Levin as Woods's counsel for the purposes of his clemency proceedings. *See* 11/3/09 Order [#3]. On November 4, 2009, Petitioner filed the instant motion for authorization of additional funds for his clemency proceedings.

## II.     Underlying Facts in Woods's Criminal Case

This Court has previously set forth the relevant factual basis behind Woods's conviction at length, and incorporates that recitation herein:

> Woods was tried and convicted for capital murder in connection with the death of Sarah Patterson, age 11, and the attempted capital murder of Cody Patterson, age 9. The victims were the children of Schwana Patterson, with whom Woods had been romantically linked in the past, though Schwana Patterson and Woods were separated and no longer living together at the time of the incident in question. In the early morning of April 30, 1997, petitioner entered the Patterson residence and grabbed Sarah by the foot while she slept in her bed. Cody Patterson, who shared a room with his older sister, awoke to hear Sarah screaming while Woods was hitting her in the chest with his fists. Soon after, Woods directed the children to climb out of the bedroom window, and both children acquiesced. The record does indicate neither child was given a chance to put on shoes, and Cody left the house wearing only his night clothes.
> Woods then drove the children to a graveyard in a vehicle belonging to his grandmother, with Sarah in the front passenger seat and Cody in the rear. The record shows Cody noticed a knife in the back seat. Upon reaching the graveyard, Woods ordered Sarah to remain in the car while he took Cody out and proceed[ed] to choke him. According to testimony from Cody Patterson, his vision was obscured and felt like he was "fixing to die;" he also stated he tried to stand, unsuccessfully, several times before getting to his knees and calling for help. Based on Cody's cries for help, an individual nearby called police. According to petitioner's statement after his arrest, Woods slapped Cody on the arm for yelling in the car, and then took him out of the car to talk to him and presumably to apologize. When Cody began to scream, Woods hit Cody twice on the back of the head with his fist, causing Cody to fall to

the ground. As Sarah was now screaming (in the car), Woods returned to the car and told her to "shut up." Petitioner then stated he again got angry, and took off in the car with Sarah.

During the investigation of the child abduction and search for Sarah, police informed petitioner Cody had been found and had told them the "whole story." Woods told police they would not find Sarah alive because he "cut her throat," and then led officers to her body. According to petitioner's statement, Sarah was extremely distraught after seeing Woods hit Cody, and she started yelling and telling Woods she would tell the police. Presumably to scare her into not telling, Woods admitted holding a knife to her throat while they were riding in the car. Woods stated that Sarah then jerked, and the knife cut her throat. He then admitted to laying her down on a quilt and leaving the scene. In a second statement to law enforcement, Woods admitted to engaging in sexual contact with Sarah at the Patterson house before removing the children.[2]

The record contains a plethora of evidence supporting these statements. Sarah's body was found in a wooded area, lying on a blanket. Her throat had been cut with an apparent knife wound, and the massive external bleeding resulting from the injury was ruled the cause of her death. Examiners also found several abrasions, bruises, and scrapes on Sarah's body, indicating a struggle and the use of a hard grip, and also found heavy larval infestation in her genital area consistent with trauma in that region. Trial testimony by forensic experts supported the manner and cause of Sarah's death, as well as the use of petitioner's vehicle at the Patterson residence, the graveyard where petitioner struck Cody, and where Sarah's body was found. Indeed, the record contains a great deal of evidence linking Woods to the offenses charged, including a knife stained with Sarah's blood, blood on the shirt petitioner wore that day, Sarah's underwear in petitioner's vehicle, and Wood's semen on the blanket in the children's bedroom where they slept on the night in question.

At the punishment phase of trial, the prosecution introduced evidence supporting its contention petitioner had a prior history of sexually assaulting Sarah Patterson. The chief evidence was that petitioner was infected with the human papilloma virus (HPV), that Sarah had also been infected with HPV some time prior to her death, and it would be reasonable to conclude she had contracted the virus from Woods. There was also testimony that Sarah had become more reclusive and "blank," and that she hated Woods. The State also presented evidence concerning petitioner's moral

---

[2]At trial, petitioner testified he grabbed Sarah by the ankle while she was in her bed, but stated it was just a game. Woods stated that, after taking the children in the car, he hit Cody on the arm, then took him out of the car where he "popped him in his head." Cody hit his head on a fencepost and was knocked unconscious. Woods testified he got in the car with the now-screaming Sarah and drove to his cousin's house. According to petitioner, his cousin promised he would "take care of it," and allegedly drove off with Sarah. Woods claimed he was told the next morning by his cousin that Sarah was dead.

culpability and future dangerousness. The record contained toxicology reports rebutting petitioner's claims he was under the influence of drugs at the time of the murder, and evidence of permanent psychological damage to Cody Patterson. The prosecution also presented evidence of petitioner's history of malevolent behavior, including an antisocial personality disorder. Based on this evidence, the jury returned its verdict supporting a sentence of capital punishment.

*Woods*, No. A:01-CA-050-SS, slip op. at 3–6 (W.D. Tex. Feb. 8, 2002) (internal citations omitted).

ANALYSIS

I. **Legal Standards**

The United States Supreme Court recently held 18 U.S.C. § 3599(a)(2) "authorizes federally appointed counsel to represent their clients in state clemency proceedings and entitles them to compensation for that representation." *Harbison v. Bell*, 129 S.Ct. 1481, 1491 (2009). Section 3599(e) governs the scope of appointed counsel's duties. *Id.* at 1486. Likewise, § 3599(f) states:

> Upon a finding that investigative, expert, or other services are reasonably necessary for the representation of the defendant, whether in connection with issues relating to guilt or the sentence, the court may authorize the defendant's attorneys to obtain such services on behalf of the defendant and, if so authorized, shall order the payment of fees and expenses therefor under subsection (g).

18 U.S.C. § 3599(f). Prior to the adoption of § 3599 in 2006, requests for investigative funds were governed by 21 U.S.C. § 848(q)(4)(B), which contained identical language. *See Powers v. Epps*, 2009 WL 901896 (S.D. Miss. 2009). The Fifth Circuit, in considering requests made pursuant to § 848(q), has held services are not "reasonably necessary" unless the petitioner shows a "substantial need" for the requested assistance. *Id.* (citing *Riley v. Dretke*, 362 F.3d 302, 307 (5th Cir. 2004)). In order to demonstrate funds are reasonably necessary to support a claim, a petitioner must demonstrate how the anticipated results will show a constitutional flaw in his trial. *Fuller v. Johnson*, 114 F.3d 491, 502 (5th Cir. 1997). Thus, where a petitioner seeks funds for an

investigation that could not yield sufficient evidence to overcome the presumption of correctness, the investigative services are not considered reasonably necessary. *Clark v. Johnson*, 202 F.3d 760, 768-69 (5th Cir. 2000).

However, because the above-cited Fifth Circuit cases were each considering whether funds were reasonably necessary in the context of a habeas petition pursuant to 28 U.S.C. § 2254, rather than in the context of clemency proceedings, their holdings are not squarely on point. *See Riley*, 362 F.3d at 304; *Fuller*, 114 F.3d at 495; *Clark*, 202 F.3d at 763. In fact, the question of what services are reasonably necessary under § 3599(f) in the context of clemency proceedings appears to be one of first impression in the Fifth Circuit.

**II.  Discussion**

The Court does not presume to decide here the exact boundaries of what services should be considered "reasonably necessary" in clemency proceedings under § 3599(f). But the Court does find that even under a far more lenient standard than that set forth by the Fifth Circuit in the context of habeas petitions, Woods has not shown the services he requests are reasonably necessary to the clemency proceedings he soon intends to undertake.

In Texas, the term "clemency" refers to the power of the Governor to pardon a criminal or commute a criminal sentence upon the affirmative recommendation of the Board of Pardons and Paroles. The sole power of granting clemency is vested in the Governor of the State by the Texas Constitution, in the following language: "In all criminal cases, except treason and impeachment, he shall have power, after conviction, to grant reprieves, commutations of punishment, and pardons; and, under such rules as the legislature may prescribe, he shall have power to remit fines and forfeitures." TEX. CONST. art. IV, § 11. As the Supreme Court has recognized, "[c]lemency is deeply

rooted in our Anglo-American tradition of law, and is the historic remedy for preventing miscarriages of justice where judicial process has been exhausted." *Harbison*, 129 S.Ct. at 1490 (citing *Herrera v. Collins,* 506 U.S. 390, 411-412 (1993) (footnote omitted)). Clemency is not simply a matter of mercy, but is "the 'fail safe' in our criminal justice system." *Id.* (citing *Herrera*, 506 U.S. at 415).

The foregoing sets out what clemency is, but what it is not is also critically important: clemency is not a substitute for the filing of an appeal or a petition for writ of habeas corpus, and it is not a forum in which to relitigate issues that have been already considered extensively and thoroughly by the state and federal courts.

In the present case, Woods was convicted and sentenced to death in 1997. He has had twelve long years—all of which he has used—to challenge his conviction and sentence. The funds he now seeks, which total $4,175, are sought in order to relitigate issues that have already been before both the state and federal courts: namely, the issue of whether he is mentally retarded and thereby ineligible for execution according to *Atkins*, and whether Richard Alley ineffectively represented him. All of the courts that have thus far considered these claims have squarely rejected them.

For instance, in Woods' successor petition for habeas corpus, this Court considered the state proceeding on his *Atkins* claim at length, ultimately denying his claim for habeas relief because there was "no basis for concluding that the state court's factual finding that Woods is not mentally retarded was unreasonable, nor has Woods met his burden of proving, by clear and convincing evidence, that the state court's finding is incorrect." *See* Cause No. 05-CA-534-SS, Order of May 16, 2006 [Docket No. 18] at 18. Nonetheless, the Court granted Woods a certificate of appealability in order to present his *Atkins* claim to the Fifth Circuit. It was denied. *Woods v. Quaterman*, 493 F.3d 580

(5th Cir. 2007). Thereafter, represented by new counsel, Woods filed a second state successor petition, again raising an *Atkins* claim and claiming the presence of significant newly discovered evidence. Even according to Woods, "[t]he inadequacies of Mr. Alley's representation of Mr. Woods at all prior stages were a central focus of that petition." *See* Pet.'s Mot. Auth. at 3. The Court of Criminal Appeals stayed Woods's scheduled execution, and ordered briefing and argument on those claims. But the petition was dismissed on October 7, 2009. *Ex parte Woods*, 2009 WL 3189179 (Tex. Crim. App. 2009).

The Court reiterates this history simply to show that Woods has had more than sufficient opportunity to present his claims on the matters he now attempts to raise once again. For instance, Woods requests an expert—at the cost of $2,675—in order to write an affidavit concerning his adaptive deficits. But in his successive state habeas proceeding, Dr. Richard Schmitt, a licensed clinical psychologist, assessed Woods's adaptive functioning and presented his findings to the state trial court in an evidentiary hearing. *See* Cause No. 05-CA-534-SS, Order of May 16, 2006 [Docket No. 18] at 5-7. Likewise, psychologist John Pita tested Woods, and his findings were considered by the state trial court. After hearing all the testimony and reviewing the exhibits presented, the trial court ultimately found Woods had failed to establish he was mentally retarded by a preponderance of the evidence; in fact, the court concluded the State had proved Woods was *not* mentally retarded beyond a reasonable doubt. *Id.* (citing CR at 257 ¶¶6-7).

In coming to this conclusion, the state habeas court made a thorough and complete investigation of circumstances suggesting Woods might be mentally retarded. The Texas Court of Criminal Appeals entered an order adopting the findings and conclusions of the trial court. *Ex Parte*

*Woods,* No. WR-44, 856-02, slip op. at 2 (Tex. Crim. App. Apr. 27, 2005) (unpublished). Likewise, this Court—after substantial and careful review of the state record—concluded that "with respect to adaptive functioning, it was entirely reasonable for the State court to conclude that Woods does not suffer any significant limitations, as "[b]oth Pita's and Schmitt's testing indicated that Woods was within the normal range in every relevant category." *Id.* at 18. This Court determined the state habeas court's finding in no way contravened the evidence in the record, and was not an unreasonable determination of the facts in light of the evidence presented.

The Court is fully cognizant of the interests at stake in this proceeding. But the Court also cannot condone the continual, repeated outflow of taxpayer funds to relitigate matters which Woods has already been given a full and fair opportunity to litigate. The merry-go-round of litigation in capital cases like this one must eventually stop. The Court is absolutely convinced the funds requested cannot be considered "reasonably necessary" to Woods's clemency proceedings, as they are requested only to present to the Board of Pardons and Paroles issues that have been meticulously considered by numerous courts, both state and federal, and have been overwhelmingly rejected by those courts. Although Woods is entitled to all reasonably necessary means to defend himself, he is not entitled to a blank check signed by a willfully blind Court. Thus, the Court finds Woods's motion for authorization of funds to pay an additional expert and a videographer must in good conscience be denied.

## Conclusion

In accordance to the foregoing,

IT IS ORDERED that Petitioner Bobby Wayne Woods's Motion for Authorization of Funds to Prepare Clemency Application [#4] is DENIED.

SIGNED this the 6th day of November 2009.

_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE